## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HORACE T. KELLY III,
    *Plaintiff*,

    v.                           No. 3:22-cv-1366 (JAM)

MCLENNAN *et al.*,
    *Defendants*.

### ORDER OF DISMISSAL WITHOUT PREJUDICE

The plaintiff is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* asserting that various law enforcement and prison officials violated his rights. After an initial review of the complaint pursuant to 28 U.S.C. § 1915A, I conclude that he has not alleged plausible grounds for relief as to most of his claims and that his claims against several of the defendants have not been properly joined in a single action. Accordingly, I will dismiss the complaint without prejudice.

### BACKGROUND

The plaintiff Horace T. Kelly III has filed an amended complaint naming the following defendants: two Hartford police officers named "Mclennan" and "Brian H."; a parole officer named "Pawlich"; a Hartford police sergeant named Christopher Chanaca; a state prosecutor named "M. Riley"; the City of Hartford; and four officials of the Connecticut Department of Correction ("DOC") including former DOC Commissioner Scott Semple and other DOC officials including "Aldi," "Papoosha," and "Santiago."[1]

According to the complaint, on April 14, 2019, Kelly was sitting with a friend outside a home where Kelly lived with his mother in Hartford, Connecticut.[2] He and his friend were

---

[1] Doc. #8 at 1, 3-6.
[2] *Id.* at 7 (¶¶ 1, 4).

smoking marijuana when he saw two police officers, Mclennan and Brian H., stop across the street from the house.[3]

At the time Kelly was on state parole for a firearm charge.[4] Hoping to avoid law enforcement contact, Kelly went inside the house and refused to speak with the officers even after they surrounded his house.[5]

The officers then called Kelly's parole officer, Pawlich, who arrived and with the police officers conducted a compliance check of the residence.[6] They found two firearms in the basement.[7] Despite the fact that Kelly's friend took "full responsibility" for the two firearms, both Kelly and the friend were arrested and charged with the firearms.[8] Kelly was prosecuted by M. Riley and ultimately acquitted at trial.[9]

While awaiting trial on the firearms-related charges, Kelly was detained with the DOC, placed in a restrictive housing unit, and then transferred to the Security Risk Group ("SRG") program.[10] He was placed in the SRG program without notice or a hearing, and despite the fact that he told Aldi, Papoosha, and Santiago that he was not a gang member.[11] He was also subject to an assault and harsh conditions of confinement.[12]

## DISCUSSION

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be

---

[3] *Ibid.* (¶¶ 3, 4).
[4] *Id.* (¶ 2).
[5] *Id.* at 8 (¶¶ 6-7).
[6] *Ibid.* (¶¶ 8, 9).
[7] *Ibid.* (¶ 10).
[8] *Ibid.* (¶ 11).
[9] *Id.* at 9 (¶ 12), 15 (¶ 4).
[10] *Ibid.* (¶¶ 13, 16).
[11] *Id.* at 9-10 (¶¶ 16-17).
[12] *Id.* at 10, 12 (¶¶ 19, 20, 28).

granted, or that seeks monetary relief from a defendant who is immune from such relief.[13] 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to raise the strongest arguments they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

### *Unlawful search*

Kelly alleges that Mclennan, Brian H., and Pawlich violated his rights under the Fourth Amendment when they searched the basement of his home.[14] The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV.

If the police have conducted a search or a seizure, the general rule is that the Fourth Amendment requires the police to have acted pursuant to a court-authorized warrant. *See, e.g.*, *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015). But this requirement is subject to well-established exceptions. *Ibid.* Among these exceptions is a "special needs" exception for searches that have a primary purpose distinct from the general interest in crime control. *Id.* at 420.

---

[13] Unless otherwise noted, this ruling omits all internal quotation marks, citations, brackets, and other alterations in its quotations and citations of case decisions.

[14] *Id.* at 14-15 (¶¶ 1, 4). Although Kelly also alleges that M. Riley should be liable for unlawful search, he does not allege facts to show that Riley took part in any search.

The Second Circuit has ruled that searches conducted pursuant to a State's probation or parole system fall within the "special needs" exception provided that the search is reasonably related to the duties of the probation or parole officer who conducts a search. *See United States v. Braggs*, 5 F.4th 183, 187 (2d Cir. 2021). Such duties of a probation or parole officer include the supervision, rehabilitation, and societal reintegration of a defendant, as well as assuring that the defendant does not harm the community while on supervision. *Ibid.*

Thus, the Second Circuit ruled in *Braggs* that the Fourth Amendment allowed a parole officer—with the assistance of a team of law enforcement officers—to conduct a search of a parolee's home for the purpose of detecting a potential parole violation and even in the absence of reasonable suspicion that the parolee had violated the terms of his release. *Id.* at 188. Moreover, notwithstanding the participation of law enforcement officers to assist a probation officer's search of a home, the Second Circuit has rejected arguments that the motives of or participation of law enforcement officers invalidates the search. *See United States v. Chandler*, 56 F.4th 27, 43 (2d Cir. 2022).

The facts as alleged by Kelly himself in the complaint make clear that the search of Kelly's home was performed by a state parole officer (Pawlich) with the assistance of local police officers (Mclennan and Brian H.). The complaint does not allege any facts to suggest that Pawlich engaged in the search for any personal or improper reason that was not reasonably related to his duties as a probation officer. To the contrary, the complaint expressly alleges that the search was a compliance check. A compliance check is a function that is reasonably related to the duties of a probation officer to ensure that those under his supervision are not engaged in ongoing violations of the law and that pose a risk of danger to the community.

In short, the complaint does not allege facts to plausibly suggest that the search of Kelly's home was not reasonably related to the duties of Kelly's parole officer and not within the scope of the "special needs" exception to the Fourth Amendment's warrant requirement. Accordingly, I will dismiss Kelly's claim for an unlawful search in violation of the Fourth Amendment.

### False arrest and malicious prosecution

Kelly alleges claims for false arrest against Mclennan, Brian H., Pawlich, and M. Riley and for malicious prosecution against M. Riley. A plaintiff who has been subject to arrest or other seizure by reason of conduct that would otherwise violate the common law right against false arrest or malicious prosecution may pursue a Fourth Amendment claim for false arrest or malicious prosecution. *See Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020); *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).

But, as the Second Circuit has explained, "[p]robable cause is a complete defense to a constitutional claim of false arrest," and "continuing probable cause is a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). "Probable cause exists where the facts and circumstances within [an officer's] knowledge and of which [the officer] had reasonably trustworthy information are sufficient in themselves to warrant [an officer] of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949). The probable cause standard is not a "high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). In addition, even if probable cause is lacking, an officer is entitled to qualified immunity so long as there is at least *arguable* probable cause for an arrest and prosecution. *See Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022).

Notwithstanding Kelly's eventual acquittal at trial, Kelly does not allege facts to plausibly show that there was no arguable probable cause for his arrest or prosecution in the first place. To the contrary, he alleges that he was previously convicted of a firearms crime and that the officers found two firearms in the house where he resided with his mother. This was arguably enough for an officer of reasonable caution to believe that Kelly was unlawfully possessing firearms. *See, e.g.*, *Caraballo v. City of New York*, 526 F. App'x 129, 131 (2d Cir. 2013) (police had probable cause to arrest residents of an apartment where contraband was found and where contraband had previously been found).

Kelly alleges, however, that his friend took full responsibility for the firearms. But his friend was a juvenile and did not reside at the house where the firearms were found, so a reasonable officer could have believed it to be less likely that the firearms found inside the house belonged solely to his friend rather than to Kelly himself.

In any event, as the Second Circuit has explained, "[p]robable cause does not necessarily disappear simply because an innocent explanation may be consistent with facts that an officer views as suspicious," and "officers were not required to accept [any particular witness's] account on faith" but "were entitled to weigh [the witness's] explanation . . . against the facts on the other side of the ledger." *Figueroa v. Mazza*, 825 F.3d 89, 102 (2d Cir. 2016) (internal quotations omitted). Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal quotations omitted).

In short, the facts as alleged in the complaint show that there was at least arguable probable cause for Kelly's arrest and prosecution. Accordingly, because Kelly has not alleged

6

facts showing the absence of arguable probable cause, I will dismiss Kelly's claims for false arrest and malicious prosecution.

### Due process

Apart from Kelly's Fourth Amendment claims, he alleges a violation of his rights to due process under the Fifth and Fourteenth Amendments. But "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' [the] claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Therefore, because Kelly's Fourth Amendment claims fail, so too must his claims under the Fifth and Fourteenth Amendments.

### Section 1985

Kelly alleges that the defendants are liable for a civil rights conspiracy under 42 U.S.C. § 1985(3). The Supreme Court has construed and limited § 1985(3) to require a plaintiff to prove a conspiracy that has the following characteristics: "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993); *see also Sarner v. Caldwell-Boyd*, 2022 WL 4132940, at *5 (D. Conn. 2022) (discussing these requirements). Because Kelly has failed to allege any racial or other class-based animus and because he has not identified any interference with rights protected against both private and public encroachment, I will dismiss his claim under § 1985(3).

### *Supervisory liability*

Kelly alleges that a police sergeant—Christopher Chanaca—is liable for failure to train and supervise Mclennan and Brian H. and because he "signed off" on a police report. But because Kelly has failed in the first instance to allege facts to show that Mclennan and Brian H. violated his rights, he has no grounds to fault Chanaca for failure to supervise or train them or for signing off on any police reports that Mclennan or Brian H. may have written. Accordingly, I will dismiss Kelly's claim against Chanaca.

### *Municipal liability*

Kelly further alleges that the City of Hartford is liable for failure to train and supervise Chanaca, Mclennan, and Brian H. A municipality may be liable for unconstitutional misconduct by its employees if the misconduct was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional deprivations by municipal employees. *See Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). But because Kelly has failed in the first instance to show that any Hartford police officer violated his constitutional rights, he has no grounds to proceed against the City of Hartford. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Nor does he allege facts to plausibly show that any violation of his rights by the Hartford police department was caused by a failure to train and supervise police officers. Accordingly, I will dismiss Kelly's claim against the City of Hartford.

### *State law claims*

Kelly alleges state law claims including a violation of his rights under the Connecticut Constitution as well as for intentional and negligent infliction of emotional distress. But in the

absence of any plausible federal law claim and in the absence of federal diversity jurisdiction, I decline at this time to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any of his state law claims. *See, e.g.*, *SL-x IP S.a.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2023 WL 2620041, at *5 (2d Cir. 2023).

### *Misjoined defendants*

Kelly alleges that as a result of his arrest he was subject to imprisonment pending his trial and during that time was wrongly subject without a hearing to the highly restrictive conditions of the SRG program. He alleges these prison-related claims against various officials of the Connecticut Department of Correction including Semple, Aldi, Papoosha, and Santiago.

Rule 20 of the Federal Rules of Civil Procedure permits a plaintiff to sue multiple defendants in the same lawsuit only if the allegations arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if there are "question[s] of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2). Kelly's claims against Semple, Aldi, Papoosha, and Santiago do not arise from the same transactions or occurrences that are the basis for his claims against the remaining defendants whom he alleges subjected him to a wrongful search, arrest, and prosecution. The only connection between these two sets of claims is temporal: that Kelly was subject to imprisonment following the allegedly wrongful search and arrest and during the time when he was subject to an ongoing prosecution. The two sets of claims do not otherwise involve common defendants or any other issue of common fact or law. In essence, Kelly has filed two lawsuits in one: the first against those allegedly responsible for a wrongful search, arrest, and prosecution, and the second against those who were allegedly responsible for his mistreatment while imprisoned.

In similar circumstances, other courts have concluded that there has been an improper joinder of defendants in violation of Rule 20(a)(2). *See Lindsay v. Semple*, 2019 WL 3317320, at *10-11 (D. Conn. 2019) (prisoner's claim against supervisory DOC personnel regarding his readmission to the SRG program not properly joined with his claims against other prison official defendants arising from denial of medical care and use of excessive force); *Torres v. UConn Health*, 2017 WL 3737945, at *1 (D. Conn. 2017) (prisoner's claim against a state trooper not properly joined with prisoner's claims against DOC medical personnel relating to his treatment while imprisoned); *Webb v. Maldonaldo*, 2013 WL 3243135, at *3 (D. Conn. 2013) (prisoner's Eighth Amendment claims of excessive force against some DOC officials not properly joined with First Amendment claim against other DOC officials challenging DOC policy prohibiting certain sexually explicit materials).

Although Rule 21 makes clear that misjoinder of defendants "is not a ground for dismissing an action," it allows a court to "drop a party" and to "also sever any claim against a party." Fed. R. Civ. P. 21. Here, I conclude that dropping the defendants Semple, Aldi, Papoosha, and Santiago from this action is warranted and that any claims against them must be severed from Kelly's claims against the remaining defendants. Therefore, I will dismiss Kelly's claims against Semple, Aldi, Papoosha, and Santiago but without prejudice to his prompt re-filing of these claims by way of a separate action. *See Ibbison v. Quiros*, 2023 WL 1766440, at *8 (D. Conn. 2023) (dismissing without prejudice claims against misjoined defendants); *Lindsay*, 2019 WL 3317320, at *11 (same); *Torres*, 2017 WL 3737945, at *1 (same).

## CONCLUSION

The Court DISMISSES without prejudice Kelly's claims pursuant to 28 U.S.C. § 1915A against the following defendants: Mclennan, Brian H., Pawlich, Chanaca, M. Riley, and the City

of Hartford. If Kelly believes in good faith that he can allege facts that overcome the concerns stated in this ruling, then he may file an amended complaint not later than **July 5, 2023**. The Clerk of Court shall close this case subject to re-opening in the event that Kelly timely files an amended complaint against these above-named defendants.

The Court otherwise DISMISSES without prejudice and pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure Kelly's misjoined claims against the remaining defendants: Semple, Aldi, Papoosha, and Santiago. If Kelly wishes to proceed against these four defendants with respect to the conditions of his confinement, then he may file a separate complaint against them on or before **July 5, 2023**.

It is so ordered.

Dated at New Haven this 5th day of June 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

11